UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SEMICAPS PTE LTD,<br><br>Plaintiff,<br><br>v.<br><br>HAMAMATSU CORPORATION, et al.,<br><br>Defendants. | Case No. 17-cv-03440-DMR<br><br>**ORDER DENYING DEFENDANT'S MOTION FOR LEAVE TO FILE A MOTION FOR RECONSIDERATION**<br><br>Re: Dkt. No. 66 |

Plaintiff SEMICAPS Pte Ltd. ("SEMICAPS") filed this patent case against Defendants Hamamatsu Corporation, Hamamatsu Photonics K.K., and Photonics Management Corp. (collectively, "Hamamatsu"), alleging that Hamamatsu infringes the claims of U.S. Patent No. 7,623,982 (the "'982 patent"). Hamamatsu moved to dismiss the complaint, arguing that the asserted claims are directed to patent-ineligible subject matter. On August 16, 2019, the court denied Hamamatsu's motion to dismiss the complaint. Hamamatsu now moves for leave to file a motion for reconsideration of the court's August 16, 2019 order. For the following reasons, the motion is denied.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

The '982 patent is titled "Method of Testing an Electronic Circuit and Apparatus Thereof." The court recited the relevant details of the technology and asserted claims at length in its order denying the motion to dismiss. *SEMICAPS Pte Ltd. v. Hamamatsu Corp.*, 393 F. Supp. 3d 802, 804-06 (N.D. Cal. 2019). In brief, the '982 patent relates to a method of and apparatus for testing electronic circuits using a laser in order to determine the location of defects on a semiconductor circuit. The '982 patent's background information describes the problem the patent seeks to solve, explaining that advances in integrated circuit technology have reduced the detection sensitivity of laser induced techniques to perform fault localization testing. Conventional approaches to

improve detection sensitivity, such as increasing the power of the laser beam and using lock-in amplifiers, have not been entirely successful. The '982 patent attempts to increase detection sensitivity in laser-based fault detection systems without increasing the power of the laser beam or using lock-in amplifiers. *Id*. The claimed method "comprises radiating a laser beam onto the electronic circuit, and determining a plurality of samples of a response signal output by the electronic circuit during the period when the laser beam is radiated." *Id*. at 805 (quotation omitted). "A signal processor process[es] the sample measurements of the response signal of the electronic circuit under test by accumulat[ing] the plurality of samples to generate a value, and then generat[ing] a test result based on the value generated." *Id*. (quotation omitted). "Based on the generated value, a fault on the electronic circuit may appear as a bright spot, bright line, or bright area at a pixel location corresponding to the location of the fault on the electronic circuit." *Id*. (quotation omitted).

Hamamatsu moved pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss the complaint, arguing that the asserted claims of the '982 patent are invalid under 35 U.S.C. § 101 for failing to claim patent-eligible subject matter.

In its order denying the motion to dismiss, the court set forth the Supreme Court's two-part test for determining whether a claim's subject matter falls outside Section 101:

> First, we determine whether the claims at issue are directed to one of those patent-ineligible concepts. If so, we then ask, "[w]hat else is there in the claims before us?" To answer that question, we consider the elements of each claim both individually and "as an ordered combination" to determine whether the additional elements "transform the nature of the claim" into a patent-eligible application. We have described step two of this analysis as a search for an "'inventive concept'"—*i.e.,* an element or combination of elements that is "sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself."

*Id.* at 808-09 (quoting *Alice Corp. Pty. V. CLS Bank Int'l*, 573 U.S. 208, 217-18 (2014) (internal citations omitted, alterations in original).

At the first step of the *Alice* inquiry, Hamamatsu argued that the representative claims are directed to the abstract idea of collecting data and processing it to generate a test result. It asserted "that this case is similar to those that found that the claims are abstract where they are directed to

2

some combination of collecting and/or analyzing information and presenting the results of those processes," including *Electric Power Group, LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016). *Id*. at 810 (quotation omitted). Hamamatsu also argued that "the inclusion of hardware and software components in the asserted claims does not change the abstract focus of the claims." *Id*. at 812. In response, SEMICAPS disputed Hamamatsu's framing and argued that the claims are "directed to a specific technological problem, namely, improving fault detection sensitivity in laser-based testing of integrated circuits," and that the patent "describes and claims a specific solution to that problem." *Id*. at 812 (quotations omitted).

The court found that "Hamamatsu's characterization of the '982 patent as directed to the processes of collecting and analyzing information and presenting the results of those processes [was] overly reductive" and "ignore[d] the technical context of the patent and the claimed improvements over the prior art." *Id*. at 814. The court described the asserted claims as follows:

> The '982 patent explains how advancements in integrated circuits, including the use of more metallization layers and materials with lower thermal conductivity, have resulted in the need for increased fault detection sensitivity. It describes the problems inherent with existing approaches and sets forth a new system for testing integrated circuits that enables the detection of otherwise undetectable response signals. Claim 1 describes the claimed method, which involves radiating a laser beam onto the electronic circuit, determining a plurality of samples of a response signal output during the period the laser is radiated, accumulating the plurality of samples to generate a value, and generating a test result based on the value. Claim 21 sets forth the claimed apparatus, comprised of a laser beam source to radiate a laser beam onto the electronic circuit, a control system to direct the laser beam source to dwell on a certain location on the electronic circuit, a measuring circuit to determine a plurality of samples, and a signal processor to accumulate the plurality of samples to generate a value and a corresponding test result.
>
> These claims describe a method and apparatus that enable the detection of response signals that were otherwise undetectable using prior art methods due to insufficient sensitivity, and the corresponding analysis of such response signals in order to determine the location of a fault on an electronic circuit.

*Id.* at 814-15. The court distinguished the claims of the '982 patent from the claims at issue in *Electric Power Group*, which involved "accumulating *existing data* from disparate sources, analyzing it, and displaying the results." *Id*. at 815. In contrast with the *Electric Power Group* claims,

3

> the method disclosed in the '982 patent is not merely a process of collecting readily observable data in the form of response signals and analyzing it to localize faults on the circuit. Instead, the asserted claims of the '982 patent describe a method of detecting response signals that are otherwise undetectable using prior art methods. They are therefore directed to a "new and useful technique" for performing the specified task of using a laser to perform fault localization testing of an electronic circuit.

*Id*. (citation omitted).

The court concluded that the asserted claims of the '982 patent are not directed to an abstract idea, but instead "focus on a specific means or method that improves the relevant technology' and are therefore directed to patent-eligible subject matter under Section 101." *Id*. at 817 (citing *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1314 (Fed. Cir. 2016)). Accordingly, as the claims satisfied the step one *Alice* inquiry, the court did not reach the step two analysis and denied the motion to dismiss. *Id*. (quoting *Alice*, 573 U.S. at 217).

Hamamatsu now seeks leave to file a motion for reconsideration of the court's August 16, 2019 order.

## II. LEGAL STANDARD

Pursuant to Local Rule 7-9, a party may seek leave to file a motion for reconsideration of an interlocutory order at any time before judgment. Civ. L.R. 7-9(a). A motion for reconsideration may be made on one of three grounds: (1) a material difference in fact or law exists from that which was presented to the court, which, in the exercise of reasonable diligence, the party applying for reconsideration did not know at the time of the order for which reconsideration is sought; (2) the emergence of new material facts or a change of law; or (3) a manifest failure by the court to consider material facts or dispositive legal arguments presented before such order. Civ. L.R. 7-9(b)(1)-(3). The moving party may not reargue any written or oral argument previously asserted to the court. Civ. L.R. 7-9(c). Whether to grant leave to file a motion for reconsideration under Rule 7-9 is committed to the court's sound discretion. *See Montebueno Mktg., Inc. v. Del Monte Corp.—USA*, 570 Fed. App'x 675, 676 (9th Cir. 2014) (citing *Bias v. Moynihan*, 508 F.3d 1212, 1223 (9th Cir. 2007)).

## III. DISCUSSION

Hamamatsu argues that reconsideration is appropriate under Local Rule 7-9(b)(3), which

provides that reconsideration of an order may be granted upon a showing of the court's "manifest failure . . . to consider material facts or dispositive legal arguments which were presented to the Court before" the order. It argues that the order "was premised on a factual misunderstanding of how the claimed invention operates compared to conventional systems known in the prior art." Mot. 1. Specifically, Hamamatsu asserts that the court erred in its conclusion that the claims are directed to a technological improvement in the operation of a laser-induced testing system, that is, "the improve[ment] [of] an existing technological process by which *previously undetectable response signals* may be detected and analyzed to pinpoint the location of a fault on an electronic circuit." *Id*. (quoting *SEMICAPS*, 393 F. Supp. 3d at 815 (emphasis added)). According to Hamamatsu, this characterization of the invention is "factually incorrect." *Id*. at 2.

Hamamatsu states that the "response signal" to which the '982 patent refers is a voltage or current running through the electronic circuit being tested, and that voltage and current are the types of response signals that conventional laser-induced testing systems were designed to detect. *Id*. It notes that the '982 patent identifies prior art systems that measure response signals in the form of voltage or current, and states that because the '982 patent "measures the same type of response signals as conventional prior-art systems, it does not detect 'response signals that are otherwise undetectable' or 'previously undetectable.'" *Id.* Hamamatsu further contends that the concept of "previously undetectable response signals" does not appear in the patent, and that the patent does not propose improvements that would allow the claimed system to detect "previously undetectable response signals." Instead, Hamamatsu asserts, "[t]he claimed invention simply collects more data by taking multiple samples of the voltage or current, and processes this data to generate a test result." *Id*. Hamamatsu contends that the court's finding that the claimed invention enables the detection of "previously undetectable response signals" led it to determine incorrectly that the claims of the '982 patent are not abstract, and repeats its argument that the reasoning in *Electric Power Group* applies here. *Id*. at 3.

Hamamatsu's argument boils down to word choice rather than material factual error. As set forth in the order, the '982 patent discusses how conventional approaches to improve the detection sensitivity of laser induced techniques, such as increasing the power of the laser beam

5

1 and using lock-in amplifiers, "have not been entirely successful." Specifically, the patent explains that increasing the power of the laser beam carries the potential for "laser induced damage on the integrated circuit under test," and that "lock-in amplifiers are not used in a real-time integrated circuit testing environment because accurate calibration and fine control of the lock-in amplifier parameters is typically difficult to achieve in practice." *SEMICAPS*, 393 F. Supp. 3d at 804-05 (quotations omitted). The patent then identifies a new system for testing integrated circuits that improves detection sensitivity *without* using those conventional approaches. *Id*.

The court acknowledges that it is not entirely accurate to characterize the claimed method as a process by which "previously undetectable response signals may be detected." It is more precise to state that the '982 patent claims a method that improves the detection sensitivity of laser-based fault detection systems. In fact, the order repeatedly describes it as such. *See id*. at 804, 805, 815; *see also id*. at 810, 814 (describing SEMICAPS's assertion that the representative claims are directed to "improving fault detection sensitivity").

Employing a more accurate description does not drive a different substantive outcome. The court's analysis under *Alice* still stands. However, in order to dispel any confusion, the court will issue an amended order on Hamamatsu's motion to dismiss that clarifies that the '982 patent "sets forth a new system for testing integrated circuits that improves detection sensitivity of response signals," "describe[s] a method and apparatus that enable the detection of response signals due to improved detection sensitivity," describes "a method of achieving improved detection sensitivity of response signals"; and "claim[s] a step-by-step method to improve an existing technological process by which response signals may be detected and analyzed to pinpoint the location of a fault on an electronic circuit." *See id.* at 815.

//
//
//
//
//

6

## IV. CONCLUSION

For the foregoing reasons, Hamamatsu's motion for leave to file a motion for reconsideration is denied.

**IT IS SO ORDERED.**

Dated: November 5, 2019



Donna M. Ryu
United States Magistrate Judge